UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 6:17-CR-070-CHB-4 |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| TINA R. PARTIN, ) | **ORDER GRANTING MOTION FOR** |
| ) | **COMPASSIONATE RELEASE** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Tina R. Partin's *pro se* "Memorandum in Support of Request for Reduction of Sentence," which the Court construes as a Motion for Compassionate Release. [R. 700]. Attached to the motion is a "Motion for Appointment of Counsel." *Id.* at 6. The United States responded, [R. 706], and "agrees that a reduction is appropriate." *Id.* at 1. For the reasons stated herein, Defendant's Motion for Compassionate Release is **GRANTED**, and her request for counsel is **DENIED as moot**.

### I. Background

On July 22, 2021, a jury found Defendant Tina Partin guilty of conspiring to distribute a mixture or substance containing a detectable amount of methamphetamine (500 grams or more) and a quantity of pills containing oxycodone. *See* [R. 599]. Defendant was sentenced on November 16, 2021 to a total of 220 months of imprisonment, followed by ten-year period of supervised release. [R. 641 (Judgment and Commitment Order)]. At the time of her sentencing, Defendant had been in custody in a local detention facility since approximately May 2018. *See id.* at 2; [R. 644, p. 32]. Defendant is now housed at Federal Medical Center ("FMC") Carswell

- 1 -

in Fort Worth, Texas.[1] Her projected release date is December 12, 2033. *Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited February 2, 2024). On October 31, 2023, Defendant moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), known as a "compassionate release," in light of her terminal medical conditions. [R. 700].

In her motion, Defendant advised that she planned to live with her daughter in Lexington, Kentucky if released. *Id.* at 2. However, the Court, with the assistance of the United States Probation Office, contacted Ms. Partin's daughter and was advised that this post-release plan may not be feasible at the current time. *See* [R. 708, p. 1]. Nevertheless, the Court, recognizing that it was likely to grant Defendant's motion, *see id.*, appointed counsel to represent Defendant in this matter and ordered counsel to supplement the motion with an updated release plan. *Id.* Defendant's appointed counsel has now filed that supplement outlining Defendant's plan to live with a long-term friend in Corbin, Kentucky. [R. 711]. The Court has since been advised by the United States Probation Office that, after conducting a home inspection of the friend's residence, the probation officer feels that the friend can provide an acceptable post-release placement for Defendant.

## II.  Legal Standard

The compassionate release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3582(c) provides that:

The court ***may not*** modify a term of imprisonment once it has been imposed ***except that***—
    (1) In any case—

---

[1] The Court's electronic docketing system lists Ms. Partin's prior address at the Aliceville Federal Corrections Institute in Aliceville, Alabama. However, the Bureau of Prison's website indicates she is currently located at Carswell FMC in Fort Worth, Texas. *Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited February 2, 2024).

> (A) *the court*, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*
>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>>> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to the First Step Act of 2018 (FSA), Pub. L. No. 115–391, 132 Stat. 5194, only the director of the Bureau of Prisons (BOP) could move for a sentence reduction under § 3582(c). 18 U.S.C. § 3582(c)(1)(A) (2017); *United States v. Jones,* 980 F.3d 1098, 1104 (6th Cir. 2020). However, under the FSA, courts may now consider a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). Exhaustion by one of the two means listed is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833-35 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834 ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.").

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), the statute requires the Court to undertake a three-step test in reviewing compassionate-release motions. *Jones*, 980 F.3d at 1107-08. At step one, the Court must "find" whether "extraordinary and compelling reasons" warrant a sentence reduction. *Id.*; 18 U.S.C. § 3582(c)(1)(A)(i). At step two, the Court must "find" whether a reduction in the sentence is

"consistent with applicable policy statements issued by the Sentencing Commission." *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A)(i). At step three, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

In reference to step two, the Sentencing Commission in 2006 issued its policy statement in § 1B1.13 of the United States Sentencing Guidelines and the application notes to that section. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 (2006). However, the Sixth Circuit previously held that § 1B1.13 is inapplicable to compassionate-release motions filed by the prisoner (as opposed to motions filed by the Director of the Bureau of Prisons). *Jones*, 980 F.3d at 1109–11; *see also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Consequently, in cases where the defendant filed a motion for compassionate release, federal courts were permitted to "skip step two of the § 3582(c)(1)(A) inquiry and [had] full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. However, the United States Sentencing Commission recently amended the policy statement at U.S.S.G. § 1B1.13 to, among other things, clarify that the amended policy statement applies to defendant-filed motions. *See* 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, First Step Act—Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 1, 2023) (available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023). The amended policy statement became effective on November 1, 2023. *Id.* As mentioned, that amendment extends the revised policy statement's applicability to include defendant-filed motions, like the one now before the Court. *See id.*; U.S.S.G. § 1B1.13 (effective Nov. 1, 2023); *United States v. Clark*, 5:21-cr-84-1, 2023 WL

8374528, *2 (N.D. Ohio Dec. 4, 2023) (explaining that the policy statement now applies to 18 U.S.C. § 3582(c)(1)(A) motions brought by inmates); *Randall v. United States*, No. 4:03 cr-00922-TLW, 2023 WL 8242547, *1 (D. S.C. Nov. 28, 2023) (same).

Further, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519. Of course, when granting a compassionate-release motion, the district court must address all three steps in its analysis. *Id.* The defendant bears the burden of establishing a sentence reduction is warranted. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

With these standards in mind, the Court will now turn to the substance of Defendant's Motion.

### III.  Discussion

As an initial matter, the Court will first address whether Defendant has satisfied the administrative exhaustion requirement. *Alam*, 960 F.3d at 833−35. In her Motion, Defendant states that she "applied for a sentence reduction from her Warden and has not received a response to this request." [R. 700, p. 1]. She attaches a letter requesting compassionate release, which is undated and unsigned, but on which is handwritten "Tina Partin, Sent to RIS Coordinator, 8/28/2023." *Id.* at 4. In the letter, Partin writes (presumably to the RIS coordinator) that she applied previously for compassionate release and believed it had been approved by the Warden, but was told "it did not go through" when she attempted to follow up. *Id.* She asks the coordinator to "please reopen my file as my conditions are terminal." *Id.*

In its response, the United States explains that, according to Defendant's BOP records, Defendant Partin submitted "a medical summary requesting compassionate release on health-related grounds" sometime in February or March 2022. [R. 706, p. 1]. At that time, *Defendant's*

*medical provider estimated that she had approximately six months or less to live due to her health conditions*. *Id.*; *see also* [R. 706-1, p. 2]. The Warden then recommended release due to Defendant's health concerns, namely, her Hepatitis C and cirrhosis diagnoses. [R. 706, p. 1]; *see also* [R. 706-1, p. 1]. However, inexplicably, her request was not granted, and the BOP's internal system indicates the Defendant withdrew her request before it could be fully reviewed. [R. 706, p. 2]. The United States represents, however, that it has reviewed the BOP records and "has seen nothing in these materials" indicating that Defendant withdrew her request or why it was marked as withdrawn. *Id.*

Under these circumstances, the United States does not contest that Defendant has administratively exhausted her claim with the BOP, [R. 706, p. 2], and in fact "believes Ms. Partin has substantially complied with the administrative remedy requirements of 18 U.S.C. § 3582(c)(1)(A)." *Id.* The Court agrees. Because more than thirty days have passed since Defendant made her request to the Warden and the date she filed the present Motion (October 31, 2023), and because there is no evidence indicating that Defendant withdrew her request to the Warden, the present Motion is properly before the Court. *Alam*, 960 F.3d at 833−35.

### A. Extraordinary and Compelling Reasons

The Court next considers whether the Defendant meets the substantive requirements for compassionate release as outlined by the Sixth Circuit in *Jones*. At step one, the Court must find that "extraordinary and compelling reasons" warrant a sentence reduction. § 3582(c)(1)(A)(i); *Jones*, 980 F.3d at 1107–08. The statute does not define "extraordinary and compelling." However, as mentioned above, the amended policy statement in U.S.S.G. § 1B1.13 is now applicable to defendant-filed motions. *See* U.S.S.G. § 1B1.13 (effective Nov. 1, 2023). As relevant here, that policy statement provides that extraordinary and compelling reasons exist if

- 6 -

> [t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

*Id.* § 1B1.13(b)(1)(A). The policy statement also provides that extraordinary and compelling reasons exist if the defendant is "suffering from a serious physical or medical condition . . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13(b)(1)(B)(i).

Regarding her medical circumstances, Defendant Partin, age fifty-five, states that she suffers from "serious medical conditions," including stage four liver failure and end stage renal disease. [R. 700, p. 1]. She states that these conditions have caused her to be hospitalized several times during her incarceration. *Id.* at 1–2. She further states that she "is experiencing both serious and deteriorating physical health symptoms and her ability to perform self care (sic) activities has significantly declined." *Id.* at 2. For example, during her emergency hospital visits, she experienced ascites, or fluid buildup on the liver, which in turn causes fatigue and is "extremely painful." *Id.* This condition required her to undergo a procedure to drain off the fluid. *Id.* She states that the BOP is not managing her symptoms or her pain. *Id.* Defendant also notes that COVID-19 "continues to pose a health risk to people like Ms. Partin, and with the fall surge, even more so." *Id.* On this point, she notes that Alabama's daily COVID hospital admissions had recently increased by eleven percent. *Id.*

Defendant does not attach any medical records to her Motion, but she explains that she "has made several attempts" to obtain these documents from Aliceville FCI's Health Care Service Department, "to no avail." *Id.* Nevertheless, her Pre-Sentence Report ("PSR") confirms

- 7 -

that she suffers from serious health challenges. *See* [R. 644, p. 29]. In fact, at the time of her sentencing, Defendant was prescribed approximately twenty prescriptions to treat a host of physical maladies, such as diabetes, high blood pressure, allergies, heart-related issues, anemia, and liver disease. Moreover, the United States attaches to its response a March 4, 2022 letter from Defendant's medical provider at Aliceville FCI, which explains that Partin "has multiple chronic conditions, including hypertension, diabetes, and Hepatitis C," as well as "severe Cirrhosis of the liver." [R. 706-1, p. 2]. At the time of that letter, Partin had "developed liver failure, with sever ascites that require weekly hospitalizations." *Id.* That medical provider, Dr. Li, opined that *Partin had less than six months to live at that time and "strongly recommend[ed] Compassionate Release." Id.* (emphasis added).

Based on this opinion, the Warden recommended to the BOP Office of General Counsel that Partin's 2022 request for compassionate release be granted, s*ee id.* at 1, but shockingly, Defendant was not released. As expressed by the United States, "Dr. Li's prediction was thankfully inaccurate." [R. 706, p. 1]. The United States now represents that, since that time, Defendants' "medical records[2] reflect frequent hospitalizations and treatment for a variety of issues, including care related to her liver problems and severe complications due to advanced diabetes." [R. 706, pp. 1–2]. The United States further represents that it has contacted the clinical director at FCI Asheville regarding Defendant's current condition. *Id.* at 2. The clinical director advised that the life expectancy of an individual like Partin was typically determined by a hematologist or other specialist, but her care team stated that their "best guess" was approximately two to five years. *Id.* Under these circumstances, the United States does not

---

[2] The United States represents that the bulk of these medical records are available to the Court, but the United States did not attach them to its response due to their volume. [R. 706, p. 2].

dispute that Defendant's serious health conditions qualify as "extraordinary and compelling reasons" for compassionate release. *See generally* [R. 706].

The Court agrees. Given Defendant's chronic, terminal, and debilitating medical conditions, it is obvious that Defendant meets the first prong of the *Jones* test (she has demonstrated extraordinary and compelling reasons for release), as conceded by the government. For the same reasons, the Court finds that a reduction in the sentence is consistent with applicable policy statements issued by the Sentencing Commission pertaining to the medical circumstances of the defendant. 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13(b)(1)(A); U.S.S.G. § 1B1.13(b)(1)(B)(i) (effective Nov. 1, 2023). The Court will therefore turn to the statutory factors under § 3553(a).

### B. Balancing Under § 3553(a)

Even though Defendant's health conditions satisfy steps one and two of the *Jones* inquiry, release is warranted only if it is consistent with the sentencing factors set out in 18 U.S.C. § 3553(a), which include in part: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public from further crimes, and avoid unwarranted sentencing disparities. § 3553(a)(1)–(7); *see also Jones*, 980 F.3d at 1112–16 (discussing the district court's obligation to weigh the § 3553(a) factors and to provide specific factual reasons for its decision that furnish a thorough factual record for review). This Court need not "specifically articulat[e]" every single § 3553(a) factor as part of its analysis. *Jones*, 980 F.3d at 1114. Rather, the record "as a whole" (the original sentencing proceeding and the modification proceeding) must confirm the district court considered the "pertinent" factors. *Id.* at 1115. This Court has thoroughly reviewed the

sentencing proceedings in this case, along with the parties' arguments and submissions related to the current Motion and is convinced that release is warranted under the statutory factors.

Defendant Partin, proceeding *pro se*, does not specifically address the § 3553(a) factors, though she does argue that she "is no longer a threat to her community." [R. 700, p. 2]. She argues that, "[d]ue to her age, debilitating health conditions as well as the programming she received while incarcerated, she no longer poses a risk to the safety of others." *Id.* As noted above, Ms. Partin has now updated her post-release plan and has secured an acceptable placement with a long-term friend in Corbin, Kentucky.

In addition to these arguments, the Court has the benefit of the sentencing proceedings and pleadings in this case, the PSR, and the arguments of the United States. The United States acknowledges its "concerns related to the application of the 18 U.S.C. § 3553(a) factors to Ms. Partin's sentence." [R. 706, p. 3]. Specifically, the United States maintains concerns relating to "Ms. Partin's history and characteristics; the serious of the offense, need to promote respect for the law, and to provide just punishment; and the protection of the public." *Id.* However, the United States represents that "[t]hese concerns are offset to a degree by the nature and extent of her medical issues." *Id.* The United States explains, "Ultimately, the question is whether or not Ms. Partin's health is compromised to such a degree that she is unlikely to engage in drug use—and in turn—drug trafficking activity going forward. The United States believes that it is." *Id.*

With this in mind, the Court turns to the 3553(a) factors. First, the "nature and circumstances of the offense and the history and characteristics of the defendant" ultimately weigh in favor of release (or certainly do not preclude it). Ms. Partin was convicted of a serious drug trafficking offense. However, as already noted, she currently struggles with severe and debilitating health conditions. The record indicates—and the United States agrees—that Partin's

health is so compromised that she presents no danger to the community either of recidivism or violence, and that she has a stable home with her long-term friend in Corbin, Kentucky. *See* [R. 700]; [R. 711]. The Court, through the United States Probation Office, verified that this friend is willing and capable of providing a stable, drug-free environment for Ms. Partin. Specifically, the probation officer determined that the friend is willing and able to provide a residence for Defendant but will also be able to transport her to medical appointments, meetings with her probation officer, and any other necessary appointments. It appears that the friend will provide financial support to Defendant and will presumably provide emotional support, as well. The friend has also agreed to report any noncompliance to Partin's probation officer. This further informs the Court's decision.

For the same reasons, Partin presents no risk to the public going forward and no need for deterrence, largely due to her debilitating and deteriorating medical condition. Partin's conduct while incarcerated further validates the Court's findings, as the government acknowledges she has had only a single disciplinary infraction while in BOP custody. [R. 706, p. 3]. That disciplinary infraction stemmed from "being unsanitary or untidy," not from violent or illicit behavior. *Id.* And while the United States represents that Partin has not participated in many classes or programs while incarcerated, it represents that this is "likely due to her ongoing health issues." *Id.* Further, as already noted, Defendant will live with a long-term friend upon release, and the United States Probation Officer has determined that Defendant's friend can provide an acceptable residence for Defendant.

The Court acknowledges the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. But here the Court finds Partin, who has been in custody since 2018, will have served approximately five years of her

sentence while suffering from severe and debilitating health conditions, and this, combined with a lengthy period of home detention, will afford just punishment and not detract from the seriousness of her offense. The Court further notes that Defendant served over three years in a local detention facility, which is not optimal for someone suffering from significant health issues, like Defendant. Moreover, the United States does not disagree that the § 3553(a) factors weigh in favor of release. *See* [R. 706, p. 3 (acknowledging its concerns under the § 3553(a) factors but stating "[t]hese concerns are offset to a degree by the nature and extent of her medical issues" and requesting that the Court grant Partin's motion).

This Court does not have the statutory authority to modify a defendant's current sentence to home confinement. *See United States v. Townsend*, 631 F. App'x 373, 378 (6th Cir. 2015) (explaining that the authority to determine the place of a prisoner's confinement is delegated solely to the Bureau of Prisons); *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991) (same); *United States v. Coates*, No. 13-cr-20303, 2020 WL 7640058, at *11 (E.D. Mich. Dec. 23, 2020). However, courts may reduce a defendant's current sentence to time served and impose a new term of supervised release and/or home confinement. *See United States v. Amarrah*, 458 F. Supp. 3d 611, 620 (E.D. Mich. 2020) (reducing sentence to time served and imposing a new term of supervised release, with the first 12 months of the release to be served in home confinement); *United States v. Anderson*, No. 3:98-CR-00038, 2020 WL 6119923, at *7 (M.D. Tenn. Oct. 16, 2020) (same, with a special term of six months of home confinement); *United States v. Brownlee*, No. 14-20562, 2020 WL 6118549, at *6 (E.D. Mich. Oct. 16, 2020) (same, with a special term of 18 months of home confinement). This Court will therefore follow suit and reduce Defendant Partin's sentence to time served and impose a special five-year term of

supervised release with home detention, to be followed by the ten-year period of previously ordered supervised release.

Home detention, coupled with the sentence already served and in light of Defendant's severe and chronic health conditions, will honor the twin goals of just punishment and respect for the law. Likewise, the Court has considered the other § 3553(a) factors, including the kinds of sentences available, any applicable policy statements, the need to avoid *unwarranted* sentencing disparities, and the need to provide restitution. *See* § 3553(a). None of these factors precludes release. Because Defendant will serve several years in home detention, no unwarranted disparity will result. After weighing all the § 3553(a) factors and Defendant's terminal medical condition, her exemplary conduct while in BOP custody, and the fact that she will serve a significant period in home detention, release is warranted.

For these reasons, this Court will exercise its considerable discretion and grant release under the conditions outlined below.

Accordingly, the Court being sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Compassionate Release [**R. 700**] is **GRANTED**.

2. Defendant's request for appointment of counsel, [**R. 700**], is **DENIED as moot.**

3. Defendant Tina R. Partin's sentence of incarceration is hereby **REDUCED to TIME SERVED effective February 12th, 2024 at 2:00 PM (EDT).**

4. The Bureau of Prisons shall release Defendant on **February 12th, 2024 at 2:00 PM (EDT), or as close as possible to that time.**

5. The Court will impose a **special five-year term** of supervised release under 18 U.S.C. § 3582(c)(1) that will begin immediately upon Defendant's release from custody.

Defendant will be placed on home detention for a period of five years, to commence immediately upon her release from incarceration. Home detention shall be without electronic location monitoring, unless the probation office deems it necessary. During this time, Defendant must remain at the address identified in her Motion for Compassionate Release, except for employment and other activities approved in advance by the probation officer. Defendant must maintain a telephone at the place of residence without any special services, modems, answering machines, or cordless telephones for the above period. During this time, Defendant shall also be subject to all the standard and special conditions of the ten-year term of supervised release that the Court imposed in the Judgment.

6.  Upon expiration of the special term of supervised release, Defendant shall begin serving the ten-year term of supervised release that the Court imposed in the Judgment. To be clear, this ten-year term of supervised release is to run entirely consecutively to the special term of supervised release discussed above. The Court will enter an amended judgment and commitment order.

This the 5th day of February, 2024.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:  Counsel
     U.S. Probation Office, Eastern District of Kentucky
     U.S. Marshal
     Bureau of Prisons